MOORE ET AL., APPELLEES, *v.* AERO MAYFLOWER TRANSIT CO., INC., ET AL., APPELLANTS.

(No. 25400—Decided March 30, 1961.)

*Mr. Carl A. Mintz,* for appellees.

*Mr. S. J. Zablotny* and *Mr. Elmer T. Elbrecht,* for appellants.

SKEEL, J.  This appeal comes to this court on questions of law from a judgment entered for the plaintiff on the verdict of the jury.  The trial court, before entering judgment, ordered a remittitur which was accepted by the plaintiff and judgment was entered as reduced by the remittitur.

The action is in conversion.  The defendant is engaged, in part at least, in the business of moving household furniture. The plaintiff, who was a resident of a suburb of the city of Chicago, Illinois, secured employment with the Vlchek Tool Company of Cleveland.  He reported for work in Cleveland April 1, 1957.  His wife and seven children remained in Chicago until school was out.  She came to Cleveland, according to her testimony, on July 7, 1957.  She must have meant June 7, 1957, because there is no dispute that the defendant moved the household goods of the plaintiff from their address at 7751 South Latrobe Street, Oak Lawn, Illinois, to Cleveland, on July 2, 1957.  On June 13, 1957, the plaintiff wrote defendant a letter telling of his contemplated move to Cleveland, designating in

his letter the goods to be moved "to an eastside Cleveland destination" and requesting an estimate. The letter asks the defendant that, "In figuring, please include packing and complete operation." This sentence is quoted because Mrs. Moore testified that she intended to return to Chicago to pack the things they wanted moved to Cleveland, although her physical condition cast some doubt as to her ability to do so. The plaintiff received an estimate from the defendant of $427.14 by telephone sometime after June 21, on which date the plaintiff had mailed a key to the house in Oak Lawn for the defendant's use in making the estimate. Without the plaintiff placing an order for the moving, the defendant moved the plaintiff's household effects to Cleveland before the plaintiff had located a place to live. The goods were put in storage, after a conversation in which the plaintiff showed great displeasure because of the alleged mistake of the defendant, although the defendant's evidence is that the plaintiff demanded that the goods should be moved at once (July 2) to save monthly house rent. Between that time and the date the plaintiff ordered the goods sent to his new home at 1909 Dooridge Drive, Glenwood Acres, Twinsburg, Ohio, by long distance calls to the general office of the defendant in Indianapolis, Indiana, the question of paying storage charges was in dispute, the plaintiff claiming that Kenneth M. Mason, vice-president and credit manager of the defendant at the general office agreed to assume such charges. However, after some correspondence, and before the plaintiff ordered the goods delivered to the Twinsburg address, the plaintiff testified that he called Mason at Indianapolis, and "Mr. Mason at that time backed down on everything that he had told me in previous correspondence and conversations and directed me to pay the storage charge under protest and file a claim." The defendant's testimony as to what plaintiff had to pay when the goods were moved out of storage is that the only payment demanded was $411, representing the moving costs. After this conversation, the plaintiff wrote a letter, dated September 16, asking the defendant to move the goods from the warehouse to the new address in Twinsburg. The letter said in part: "We should like to have this work done on Thursday or Friday of this week. Please advise by phone if this is possible (Ga. 1-2480 or Ga.

1-8370).'' The record shows subsequent to this letter, the following:

"Q. At any rate, when this letter was received by the Aero Mayflower Company they called you on the telephone and they said, yes, we will be able to put your stuff in and move it for you on either the 19th or 20th, but where is the check, or where is the letter of authorization from The Vlchek Tool Company; isn't that right, sir? A. At that time that may be correct.

"Q. And you asked them to call you by phone, didn't you? A. Yes.

"Q. They did call you by phone the very next day, which would be September the 17th, and when they told you where is the check, or where is the letter of authorization, you said don't worry, I'll have it for you on that particular morning at 9:30; is that correct? A. That's true.

"Q. So pursuant, again, to complying with your request to load your stuff, we waited for you for 10 hours, and you didn't show up and there was no purchase order, there was no check; isn't that correct? A. That's true.

" * * *

"Q. Now, didn't you tell me, sir, that you had promised this party that called you pursuant to this letter of September 16th and they had said that now we can accommodate you and deliver the goods either on the 19th or 20th, as you request, which is Thursday or Friday of that particular week, and didn't you tell them you would have that check or purchase order at 9:30? A. That's for sure, but the purchase order was out of the question, because your client had refused a purchase order from The Vlchek Tool Company.

"Q. So to get the matter clearly here before the jury, the only reason that you do not have possession of these goods today is because you refused to pay the transit charges; isn't that correct? A. No, sir; that is not correct.

"Q. What is correct? A. The reason I do not have the goods today is because I refused to pay the storage charges.

"Q. But you never offered to pay anything? A. That is not true. We have gone through the purchase order bit, sir. You could have had a purchase order from The Vlchek Tool Company.

"Q. Did you ever mail them a check saying, 'In full of all charges?' A. No, sir.

"Q. Never at any time? A. No, sir."

There is no dispute from the plaintiff's own testimony that he did not at any time tender to the defendant any amount whatever to satisfy the lien for moving the goods. With full knowledge of what he claimed were the defendant's demands, although the defendant's testimony as to its claim for storage is that no such demand was made, the plaintiff requested delivery of the goods without any reservations whatever. There is no evidence that a responsible officer of The Vlchek Tool Company ever authorized a "purchase order" to pay for the plaintiff's move from Chicago to Cleveland. In the plaintiff's first letter to the defendant and all subsequent letters written by plaintiff, he used Vlchek stationery and signed each letter "The Vlchek Tool Company, T. W. Moore, Plastic Sales." This conduct is difficult to understand, particularly when he testified that Vlchek Tool never authorized him to pledge its credit for his moving expenses and when his testimony on this subject was that they never suggested that they would pay more than half of such costs. From the foregoing quotation from the record, it is clear that the plaintiff did not tender the amount of the moving bill nor any other amount and that by his failure to appear and pay the moving costs on September 19, 1957, an additional charge of $85 for two men and a moving van for one day was added to the bill.

The defendant's testimony is to the effect that on July 2, 1957, the plaintiff called inquiring why the goods had not been moved, being concerned about his liability for another month's rent. When the goods arrived on July 3, he did protest that he had not ordered the moving. He did state that he had no place to receive delivery, and, with his knowledge and consent, the goods were put in storage. The defendant's evidence is also to the effect that the demand for payment before the goods would be delivered on September 19, 1957, was only for the moving charges from Chicago of $411.

The evidence of the plaintiff clearly shows that any alleged act of conversion occasioned by moving the goods to Cleveland without any order was waived by the plaintiff's subsequent con-

duct. Whether there was any evidence of unlawful control by the defendant over plaintiff's goods in not making delivery on September 19 is extremely doubtful, and in this regard the plaintiff has failed to sustain his contention by the proper degree of proof. Unless there was a proper tender of the amount due, before delivery, the plaintiff was not entitled to delivery of the goods. It is equally true that the evidence seeking to establish damages was clearly questionable under the surrounding circumstances. The plaintiff's evidence on the value of the goods moved to Cleveland shows a claimed value of over $9,000. Beside the items of household furnishings, there were said to be many pictures, oil paintings, manuscripts, sculptured items, the products of artists of alleged national repute, and heirlooms, all claimed to have a special personal value to the plaintiff. An oil painting of the plaintiff was valued at $1,500. It is difficult to understand, why so many objects of art, considered to be of great value and bearing a personal relation to the plaintiff, should have been abandoned by him in default of paying not more than two and one-half months of storage at $34.20 per month, or about $85. Such conduct seems inexcusable, particularly when filing a claim for overcharge. The amount of the verdict is highly excessive and shows that the jury must have been greatly influenced by passion and prejudice.

We find no errors as claimed in giving the special charges before argument or other errors as set out in the assignment of errors.

We, therefore, reverse the judgment as against the manifest weight of the evidence and excessive, and remand the cause for further proceedings according to law.

*Judgment reversed.*

KOVACHY, P. J., and HURD, J., concur.